**CARPENTER LAW GROUP**
Todd D. Carpenter (CA 234464)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: 619.756.6994
Facsimile: 619.756.6991
todd@carpenterlawyers.com

**PATTERSON LAW GROUP**
James R. Patterson (CA 211102)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: 619.756.6690
Facsimile:  619.756.6991
jim@pattersonlawgroup.com

**CARLSON LYNCH SWEET
& KILPELA LLP**
Edwin J. Kilpela, Jr. (*pro hac pending*)
Benjamin J. Sweet  (*pro hac pending*)
PNC Park
115 Federal St.; Suite 210
Pittsburgh, PA 15212
Telephone: 412.322.9243
Facsimile: 412. 231.0246
ekilpela@carlsonlynch.com
bsweet@carlsonlynch.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN VIGIL on Behalf of Himself and All Others Similarly Situated,<br><br>          Plaintiff,<br><br>vs.<br><br>GENERAL NUTRITION CORPORATION, a Pennsylvania Corporation,<br><br>          Defendant. | Case No.<br><br>**PLAINTIFF'S CLASS ACTION COMPLAINT FOR:**<br><br>1. VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*;<br>2. VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750, *et seq.*; and<br>3. BREACH OF EXPRESS WARRANTY.<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff RYAN VIGIL brings this action on behalf of himself and all others similarly situated against Defendant GENERAL NUTRITION CORPORATION ("Defendant"), and states:

## NATURE OF ACTION

1.     This is a class action regarding Defendant's false and misleading advertisement of its

1
PLAINTIFF'S CLASS ACTION COMPLAINT

health-supplement, Staminol, which it falsely represents will serve to increase male sexual performance and vitality and, additionally, will treat prostate and urinary flow issues. None of those claims regarding Staminol are true and none have been evaluated or tested by the FDA. To the contrary, each of Defendant's claims is flatly contradicted by scientific research and testing. Plaintiff, on behalf of the class of purchasers he represents, seeks redress on behalf of Staminol purchasers who were duped into purchasing Defendant's ineffective product.

2. Defendant distributes, markets, and sells Staminol, an over the counter dietary supplement for men which Defendant claims, on the product packaging and, additionally, via its nationwide marketing, will enhance the sexual performance of its users. The primary ingredients in Staminol include "Horny Goat Weed" (Epimedium Extract), "Maca Root Powder," "L-arginine," "Catuaba Bark," "Oat Straw Stems," "Damiana Leaf," "Saw Palmetto Berry," and "Muira Root." Specifically, Defendant represents, via an extensive and uniform nation-wide advertising campaign, that Staminol "supports male vitality" and "sexual health," "supports urinary flow and prostate health," and is "formulated with premium ingredients to provide maximum potency." Moreover, the packaging of Staminol states that the product is designed to "enhance male sexual performance." Defendant has also represented, on the packaging of Staminol, that the product is "scientifically formulated to provide maximum potency." *See generally* Exhibit, "A: Product Label.

3. The statements represented on the Staminol product packaging are "structure-function" claims which must be limited to a description of the role that a dietary ingredient is "intended to affect the structure or function in humans." 21 U.S.C. § 343 (r)(6). In order for a dietary supplement manufacturer to make a structure-function claim, the manufacturer must have substantiation that such statements are truthful and not misleading. *Id.*

4. Defendant does not have any credible, competent scientific evidence that substantiates its representations regarding the sexual health and performance benefits of consuming Staminol. In fact, even a cursory examination of reliable scientific evidence relating to Defendant's representations strongly indicates that Staminol has no efficacy at all, is ineffective in the treatment of prostate related health issues, and provides no benefit relating to enhancing the sexual performance and vitality of its users. Multiple valid scientific studies have been conducted on the aforementioned primary ingredients in

2
PLAINTIFF'S CLASS ACTION COMPLAINT

Staminol, and these studies have revealed that the ingredients in question are not reliable means of treating health issues related to prostate functioning, or enhancing the sexual performance, vitality, and potency of its users.

5. Additionally, federal regulations prohibit Defendant from making "disease claims" about its product. *See* 21 C.F.R. § 101.93. Disease claims are generally described as statements which claim to diagnose, mitigate, treat, cure or prevent disease where the statements claim "explicitly or implicitly, that the product…Has an effect on the characteristic signs or symptoms of a specific disease or class of diseases, using scientific or lay terminology." *Id.* Defendant clearly makes such representations on the product label for Staminol, which directly relate to the treatment of health issues related to urinary flow and prostate health. First, on the very front of the product packaging for Staminol, Defendant represents that Staminol "supports urinary flow and prostate health with saw palmetto." Additionally, on the left hand panel of the product packaging for Staminol, Defendant states that Staminol is "scientifically formulated to . . . support healthy urinary flow and prostate health." *See* product label, attached as Exhibit "A".

6. Defendant did not secure the requisite New Drug Application before marketing and selling Staminol. Accordingly, making these statements and representations without a New Drug Application ("NDA") approval from the FDA constitutes misbranding and false and misleading conduct in violation of 21 C.F.R. § 101.93.

7. Defendant conveys its deceptive representations to consumers through the use of various media platforms including its website and online promotional materials. More importantly, Defendant communicates its misleading representations about the efficacy of Staminol at the point of purchase by placing them on the product's label and packaging. Indeed, the misrepresentations about Staminol are prominently displayed on the front of the product's packaging/labeling where consumers cannot fail to notice them. The front of the Staminol product label states that the product, "Supports male vitality with proprietary blend including L-arginine and maca," "Supports urinary flow and prostate health with saw palmetto," and is "Formulated with premium ingredients to provide maximum potency." The only reason a consumer would purchase Staminol is to obtain the advertised sexual health and performance benefits, which Staminol does not provide.

8. As a result of Defendant's deceptive advertising and false representations regarding the efficacy of Staminol, Plaintiff and the proposed class have purchased a product which does not perform as represented and they have been harmed in the amount they paid for the product, which, in the Plaintiff's case is approximately $19.99 bottle.

9. Plaintiff brings this action on behalf of himself and other similarly situated consumers who have purchased Defendant's Staminol product to halt the dissemination of this false, misleading, and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased this product. Based on violations of state unfair competition laws and Defendant's breach of express warranty, Plaintiff seeks injunctive and monetary relief for consumers who purchased Staminol.

**JURISDICTION AND VENUE**

10. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and many members of the Class are citizens of a state different from Defendant.

11. This Court has personal jurisdiction over Defendant because Defendant is authorized to conduct and do conduct business in California. Defendant has marketed, promoted, distributed, and sold Staminol in California and Defendant has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible.

12. Venue is proper under 18 U.S.C. §1965(a) because Defendant transacts substantial business in this District.

**PARTIES**

13. Plaintiff Ryan Vigil resides in San Diego County, California. In or around April of 2014, Plaintiff was exposed to and saw Defendant's representations regarding the sexual health and performance benefits of Staminol by reading the Staminol product label in the GNC retail store located at 4545 La Jolla Village Dr, La Jolla, CA 92122. In reliance on the claims listed on the product label described herein and above, Plaintiff purchased the Staminol product at the previously described GNC

1  retail store. He paid approximately $19.99 for the product. At the time, Plaintiff desired to enhance his sexual experience and enjoyment. He purchased Staminol believing it would provide the advertised sexual health and performance benefits. As a result, Plaintiff suffered injury in fact and lost money. Had Plaintiff been aware of Defendant's misrepresentations and omissions, he would not have purchased Staminol.

14. Defendant is a corporation organized and existing under the laws of Pennsylvania. Defendant's headquarters and principle place of business is at 300 6th Avenue, Pittsburgh, PA 15222-2514. Defendant manufactures, advertises, markets, distributes, and/or sells Staminol to tens of thousands of consumers in California and throughout the United States.

## FACTUAL ALLEGATIONS

15. Defendant has distributed, marketed, and sold the Staminol product on a nation-wide basis, both online and at Defendant's retail locations. Staminol is available in packages of 60 capsules and retails for approximately $19.99. The Staminol packaging prominently displays Defendant's representation that the Staminol ingredient "Saw Palmetto" is able to support "urinary flow and prostate health," and the representations that Staminol "[s]upports male vitality with proprietary blend including L-arginine and maca," is "[f]ormulated with premium ingredients to provide maximum potency," "enhance[s] performance," and is "scientifically formulated to provide maximum potency as well as support healthy urinary flow and prostate health." The Staminol product packaging also states that the Staminol ingredient, Saw Palmetto, "support[s] urinary health and normal prostate function." *See* product label, attached as Exhibit "A".

16. According to the label on the Staminol package, Staminol is comprised of certain primary ingredients including, Horny Goat Weed, Maca Root Powder, L-arginine, Catuaba Bark, Oat Straw Stems, Damiana Leaf, Saw Palmetto Berry, and Muira Root. *See* product label, attached as Exhibit "A."

17. As more fully set forth herein, the scientific evidence regarding the use of the vast majority of the ingredients comprising Staminol, taken alone or in combination with other ingredients, do not provide **any** of the health and sexual performance benefits represented by Defendant. Moreover, the minimal amount of remaining Staminol ingredients taken by themselves, or in combination with one another are not sufficient to achieve the results that Defendant represents.

18. Research has shown that Horny Goat Weed is an ineffective means of addressing erectile dysfunction. Popular medications such as Viagra treat erectile dysfunction by inhibiting cGMP-phosphodiestrase-5 (PDE5). 71(9) J. Nat. Prod. 1513-1517 (2008). *See* http://pubs.acs.org/doi/full/10.1021/np800049y. In 2008, researchers found that the inhibitory potency of icariin, the active compound in Horny Goat Weed, is 80 times lower than that of Viagra. *Id.* In other words, Horny Goat Weed possesses .0125% of the potency of Viagra. Therefore consuming Horny Goat Weed is not an effective means of enhancing a man's sexual experience by alleviating the symptoms of erectile dysfunction. Scientific research clearly indicates that including Horny Goat Weed in Staminol's Proprietary Blend has no impact on the product's ability to achieve the health and sexual performance benefits that Defendant advertises.

19. Maca Root Powder, another component of Staminol's Proprietary Blend is equally ineffective. A 2010 review of the impact of Maca Root consumption on sexual health revealed that the ingredient has little effect on sexual function. 10(44) BMC Complementary and Alternative Medicine (2010). *See* http://www.biomedcentral.com/1472-6882/10/44.

20. The presence of L-arginine in Staminol's Proprietary Blend does not allow the product to achieve the advertised result of enhancing the sexual performance of its users either. Medications such as Viagra and Cialis increase Nitric oxide (NO) levels in the body. Nitric oxide functions by relaxing the muscles that cause erections to occur. Although L-arginine can be enzymatically processed to increase NO levels in some circumstances, by itself L-arginine does not increase the activity of NO synthase activity, as Viagra and Cialis do. In a 2003 study, researchers found that subjects who were given L-arginine by itself did not demonstrate an improvement in erectile function. 29 J. Sex & Marital Therapy 207 (2003). Although Defendant includes L-arginine in its Proprietary Blend, there is no evidence that consuming L-arginine will enhance the sexual performance of men. Scientific evidence clearly demonstrates that the ingredients contained in Staminol's Proprietary Blend are not capable of achieving the Proprietary Blend's advertised result (i.e. enhancing male sexual performance).

21. Furthermore, Staminol includes additional ingredients such as Oat Straw Stems, Catuaba Bark, Muira Root, Damiana Leaf, and Saw Palmetto Berry. *See* product label, attached as Exhibit "A."

However, according to the NYU Langone Medical Center, there is no real evidence that these ingredients improve sexual function in men. *See* http://www.med.nyu.edu/content?ChunkIID=21720.

22. In addition, although Defendant claims, on the Staminol product packaging, that the ingredient, Saw Palmetto, "[s]upports urinary flow and prostate health," and that Saw Palmetto "support[s] urinary health and normal prostate function," the NYU Langone Medical Center has found that the scientific evidence regarding the effectiveness of saw palmetto in treating prostate enlargement, a disorder that weakens the flow of urine, is not consistent. *See* http://www.med.nyu.edu/content?ChunkIID=21865. The institution also points out that "in the most recent and perhaps best-designed [study analyzing the effectiveness of saw palmetto in treating prostate enlargement], a 1-year trial of 225 men . . . saw palmetto failed to prove more effective than placebo." *Id*. citing 354 N. Engl. J. Med 557-66 (2006).

23. Thus, although Defendant represents that Staminol can enhance the potency and sexual and performance of its users and supports urinary flow and prostate health, reliable scientific research reveals that many of the product's primary ingredients do not provide these benefits. In short, the products is totally ineffective at providing the benefits that Defendant touts and that, in turn, lead a consumer to purchase Staminol.

24. Plaintiff and Class members have been and will continue to be deceived or misled by Defendant's deceptive claims regarding the alleged health and sexual performance benefits of using Staminol. Plaintiff purchased and consumed Staminol during the Class period and in doing so, read and considered the health and sexual performance benefit representations on the Staminol product packaging and based his decisions to purchase Staminol on these claims. Plaintiff based his purchase decision in large part on the representation that Staminol would enhance his sexual performance. Defendant's claim that using Staminol would indeed "enhance male sexual performance" was a material factor in influencing his decision to purchase and use Staminol. *See* product label, attached as Exhibit "A." Plaintiff would not have purchased Staminol had he known that the product does not provide the represented enhanced sexual performance. Representative Product Packaging Labels are attached as Exhibit, "A".

25. As a result of Defendant's representations regarding the health and sexual performance benefits of Staminol, Plaintiff and the Class members have been damaged by their purchases of Staminol and have been deceived into purchasing a product that they believed, based on Defendant's representations, would allow them to enjoy an enhanced sexual experience, when in fact, it does not.

26. Defendant has reaped enormous profits from its false marketing and sale of the Staminol.

## CLASS DEFINITION AND ALLEGATIONS

27. Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendant for violations of California state laws:

**Multi-State Class Action**

All consumers who purchased Staminol in the state of California and states with similar laws, within the applicable statute of limitations, for personal use until the date notice is disseminated[1].

Excluded from this Class is Defendant and its officers, directors, and employees, and those who purchased Staminol for the purpose of resale.

28. *Numerosity*. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of Staminol who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

29. ***Existence and Predominance of Common Questions of Law and Fact***. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

---

[1] Plaintiff preliminarily avers that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Idaho, Illinois, Maine, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Oklahoma, Oregon, Rhode Island, South Dakota, Texas, Virginia, Washington, West Virginia and Wisconsin, (Collectively, the "Multi-State Class").

(b) whether Defendant's alleged conduct violates public policy;

(c) whether the alleged conduct constitutes violations of the laws asserted;

(d) whether Defendant engaged in false or misleading advertising;

(e) whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

(f) whether Plaintiff and Class members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.

30. ***Typicality***. Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above and were subject to Defendant's deceptive health and sexual performance benefit claims that accompanied each and every bottle of Staminol that Defendant sold. Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

31. ***Adequacy of Representation***. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

32. ***Superiority***. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and

comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

33. The Class also may be certified because Defendant acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

34. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiff and Class members.

35. Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and Class members. Additionally, unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## COUNT I
## Violation of Business & Professions Code §17200, *et seq.*

36. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

37. Plaintiff brings this claim on behalf of himself and on behalf of the Class. As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendant's conduct because he purchased Staminol in reliance on Defendant's health and sexual performance claims, including *inter alia*, that Staminol:

- "[s]upports male vitality with proprietary blend including L-arginine and maca;"
- is "[f]ormulated with premium ingredients to provide maximum potency;"
- "is scientifically formulated to provide maximum potency as well as support healthy urinary flow and prostate health;"
- "support[s] vitality and enhance[s] performance;" and
- that the Staminol ingredient, Saw Palmetto, "support[s] urinary health and normal prostate function,"

(*See* Exhibit, "A") but Plaintiff did not receive any benefits from using Staminol.

38. The Unfair Competition Law, Business & Professions Code §17200, et seq. ("UCL"), and similar laws in other states, prohibit any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising. In the course of conducting business, Defendant committed unlawful business practices by, *inter alia*, making the above referenced claims in paragraph 38 and as alleged throughout herein (which also constitutes advertising within the meaning of §17200) and omissions of material facts related to the numerous scientific studies which demonstrate no health and sexual performance benefits derived from the consumption of many of the primary ingredients present in Staminol, and violating Civil Code §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200, et seq., 17500, et seq., and the common law.

39. Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

40. Defendant's actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendant engaged in false advertising, misrepresented and omitted material facts regarding Staminol, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

41. As stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws in California and other states, resulting in harm to consumers. Defendant's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, et seq.

42. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

43. Business & Professions Code §17200, et seq. also prohibits any "fraudulent business act or practice."

44. Defendant's actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, et seq.

45. Plaintiff and other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions, which are described above. This reliance has caused harm to Plaintiff and other members of the Class who each purchased Staminol. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

46. As a result of its deception, Defendant has been able to reap unjust revenue and profit.

47. Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

48. Plaintiff, on behalf of himself, all others similarly situated, and the general public, seeks restitution and disgorgement of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competition, an injunction prohibiting Defendant from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

**COUNT II**
**Violations of the Consumers Legal Remedies Act –**
**Civil Code §1750 *et seq.***

49. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

50. Plaintiff brings this claim individually and on behalf of the Class.

51. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, et seq. (the "Act") and similar laws in other states. Plaintiff is a "consumer" as defined by California Civil Code §1761(d).  Staminol is a "good" within the meaning of the Act.

52. Defendant violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Staminol product:

(5) Representing that [Staminol has]. . . characteristics, . . . uses [and] benefits . . . which [it does] not have . . . .

\*     \*     \*

(7) Representing that [Staminol is] of a particular standard, quality or grade . . . [when it is] of another.

\* \* \*

(9) Advertising goods . . . with intent not to sell them as advertised.

\* \* \*

(16) Representing that [Staminol has] been supplied in accordance with a previous representation when [it has] not.

53. Defendant violated the Act by representing and failing to disclose material facts on the Staminol labeling and packaging and associated advertising, as described above, when it knew, or should have known, that the representations were false and misleading and that the omissions were of material facts it was obligated to disclose.

54. Pursuant to §1782(d) of the Act, Plaintiff and the Class seek a court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

55. If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act, Plaintiff will amend this complaint to add claims for actual, punitive and statutory damages, as appropriate.

56. Defendant's conduct is fraudulent, wanton and malicious.

57. Pursuant to §1780(d) of the Act, attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

58. Plaintiff's CLRA warning letter is attached hereto as Exhibit C.

### COUNT III
### Breach of Express Warranty

59. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

60. Plaintiff brings this claim individually and on behalf of the Class.

61. The Uniform Commercial Code section 2-313 provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

62. At all times, California and other states have codified and adopted the provisions in the Uniform Commercial Code governing the express warranty of merchantability.

63. As discussed above, Defendant expressly warranted on each and every label of Staminol that the product lived up to the represented health and sexual performance benefits described herein and listed on the product packaging and labels. The health and sexual performance benefit claims made by Defendant are affirmations of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiff placed importance on Defendant's representations.

64. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

65. Defendant was provided notice of these issues by, *inter alia*, the instant Complaint.

66. Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing a product that provided health and sexual performance benefits as represented.

67. As a result of Defendant's breach of their contract, Plaintiff and the Class have been damaged in the amount of the price of the products they purchased.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment:

A. Certifying the Class as requested herein;

B. Awarding Plaintiff and the proposed Class members damages;

C. Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the proposed Class members;

D. Awarding actual, punitive and statutory damages to Plaintiff and the proposed Class members;

E.  Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money they are required to pay;

F.  Ordering Defendant to engage in a corrective advertising campaign;

G.  Awarding attorneys' fees and costs;

H.  Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of her claims by jury to the extent authorized by law.

Dated:  November 3, 2014

**CARPENTER LAW GROUP**

By: */s/ Todd D. Carpenter*
Todd D. Carpenter (CA 234464)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: 619.756.6994
Facsimile: 619.756.6991
todd@carpenterlawyers.com

**PATTERSON LAW GROUP**
James R. Patterson (CA 211102)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: 619.756.6990
Facsimile:  619.756.6991
jim@pattersonlawgroup.com

Edwin J. Kilpela, Jr. *(Pro Hac Pending)*
R. Bruce Carlson *(Pro Hac Pending)*
Benjamin J. Sweet *(Pro Hac Pending)*
**CARLSON LYNCH LTD**
PNC Park
115 Federal Street, Suite 210
Pittsburgh, PA 15212
Telephone: 412.322.9243
Facsimile: 412.231.0246
ekilpela@carlsonlynch.com
bcarlson@carlsonlynch.com
bsweet@carlsonlynch.com

*Attorneys for Plaintiff*